UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Cynthia Oegema,

       Plaintiff,                            Case No. 1:15-CV-00349

v.                                           Hon. R. Allan Edgar

Carolyn W. Colvin,
Acting Commissioner of Social Security,

       Defendant.
_____/

## OPINION

Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act on December 10, 2011. *See* Transcript of Administrative Hearing at page 32 (hereinafter Tr. at ___). Plaintiff alleges that she became disabled on November 24, 2010, due to impairments of her feet, hands, and shoulders. Tr. at 52. On March 30, 2012, Plaintiff's application was denied, and on April 28, 2012, Plaintiff filed a request for an administrative hearing before an Administrative Law Judge (ALJ). Tr. at 32. The ALJ held a hearing on April 24, 2013. *Id.* At the hearing, Plaintiff was represented by counsel. Tr. at 46. Testifying at the hearing were Plaintiff and vocational expert James Lozer. Tr. at 46-48. In a decision issued July 12, 2013, the ALJ denied Plaintiff's claim for benefits. Tr. at 29-40. Plaintiff appealed the decision to the Appeals Council, which denied her request for review on June 25, 2014. Tr. at 1-5. Plaintiff then filed this action on August 20, 2014. Docket # 1.

Plaintiff suffers from impairments of her neck, shoulders, hands, back, and feet. At her hearing, Plaintiff testified that she has prior work experience as a general assistant and a receptionist. Tr. at 82-85. Plaintiff testified that she could walk a couple of blocks when

wearing orthotic shoes, and that she often tried to elevate her feet to at least sitting level throughout the day. Tr. at 62, 66, 87-88. She stated that she can drive any distance as long as she gets out and walks for a few minutes after every hour of driving. Tr. at 50, 79. Plaintiff testified that she can do some housework, including dishes, dusting, and sweeping, but she indicated that she can only stand for fifteen minutes at a time before needing to sit. Similarly, she can only sit for a half hour before needing to readjust her position. Tr. at 78-79. Plaintiff retired on November 24, 2010, and has not worked since that time. Tr. at 52, 59.

        Vocational expert James Lozer testified at the hearing and was asked to evaluate Plaintiff's ability to perform her past relevant work based on four different hypotheticals. Tr. at 85-88. The first hypothetical scenario asked if a person of Plaintiff's age, education, and past relevant work experience that had the following limitations would be able to perform Plaintiff's past job as a receptionist: lifting or carrying up to twenty pounds occasionally, ten pounds frequently; sitting for a total of six hours and standing or walking (or a combination of both) for a total of four hours of an eight hour day; climbing, kneeling, and balancing occasionally; stooping, crouching, and crawling frequently; reaching overhead bilaterally occasionally; handling and fingering frequently; and avoiding exposure to extreme cold or wetness. Tr. at 85-86. Mr. Lozer noted that this person could perform work as a receptionist. In hypothetical two, the same question was asked with the additional limitations of: occasional climbing of ramps and stairs, balancing, stooping and crouching; never climbing ladders, ropes, or scaffolds; never kneeling or crawling; and not operating leg or foot controls in either lower extremity. Tr. at 86-87. Mr. Lozer stated that this hypothetical person could perform Plaintiff's past work as a receptionist. Tr. at 87. The third hypothetical added the limitation of carrying and/or lifting up to ten pounds,

sitting for about six hours, and standing or walking for a total of two hours in an eight hour work day. *Id.* Mr. Lozer said this person could perform the Dictionary of Occupational Title's (DOT) description of a receptionist, but not Plaintiff's past work as a receptionist due to her having to lift fifteen pounds at her past job. Tr. at 84, 87. Finally, in the fourth hypothetical, the only additional limitation added was the need to elevate both legs at seat level throughout the day. Tr. at 87-88. Mr. Lozer indicated a person with this added condition could not perform work as a receptionist. Tr. at 88.

The ALJ determined that Plaintiff suffers from bilateral carpal tunnel syndrome, degenerative joint disease and impairment of the right shoulder with tendinitis status-post right arthroscopic acromioplasty and distal calviculectomy, left foot bunions status-post bilateral bunionectomies, left foot osteoarthritis with multiple left foot surgeries including reconstruction, and mild osteoarthritis of the hands. Tr. at 34. Based on these conditions and the ALJ's determination of Plaintiff's physical capabilities, the ALJ concluded that Plaintiff could perform her past work as a receptionist. Tr. at 39.

Plaintiff filed an appeal on August 20, 2014 (Docket # 1), alleging that the ALJ's decision to deny social security benefits to Plaintiff was not supported by substantial evidence.[1] Plaintiff maintains that the ALJ erred in finding Plaintiff less than credible, which led to an improper RFC finding and determination that Plaintiff could perform her past work as a receptionist. Docket # 9. Defendant Commissioner of Social Security filed a response on

---

[1] After this case was transferred from the Eastern District to the Western District of Michigan, Magistrate Judge Green ordered that the parties' pending motions for summary judgment be stricken, but that their briefs would be used for purposes of this Court's review. Docket # 23. As such, this Court references the briefs for support in rendering its decision.

January 5, 2015.  Docket # 10.  Plaintiff has not filed a reply.  The matter is now ready for a decision.

I.

"Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."  *Winslow v. Comm'r of Soc. Sec.*, 566 Fed. App'x 418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); *see also* 42 U.S.C. § 405(g).  The findings of the ALJ are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991).  This Court is not permitted to try the case *de novo*, nor resolve conflicts in the evidence and cannot decide questions of credibility.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (noting the ALJ's decision cannot be overturned if sufficient evidence supports the decision regardless of whether evidence also supports a contradictory conclusion).  This Court is required to examine the administrative record as a whole and affirm the Commissioner's decision if it is supported by substantial evidence, even if this Court would have decided the matter differently.  *See Kinsella v. Schwikers*, 708 F.2d 1058, 1059 (6th Cir. 1983); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (holding that the court must affirm a Commissioner even if substantial evidence would support the opposite conclusion).

The ALJ must employ a five-step sequential analysis to determine if Plaintiff is

under a disability as defined by the Social Security Act. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). If the ALJ determines Plaintiff is or is not disabled under a step, the analysis ceases and Plaintiff is declared as such. 20 C.F.R. § 404.1520(a). Steps four and five use the residual functional capacity assessment in evaluating the claim. *Id.*

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 24, 2010, the alleged onset date. Tr. at 34; *see* 20 C.F.R. § 404.1520(b). At step two, the ALJ determined Plaintiff has the following severe impairments: bilateral carpal tunnel syndrome, degenerative joint disease and impairment of the right shoulder with tendinitis status-post right arthrosporic acromioplasty and distal calviculectomy, left foot bunions status-post bilateral bunionectomies, left foot osteoarthritis with multiple left foot surgeries including reconstruction, and mild osteoarthritis of the hands. Tr. at 34. At step three, the ALJ determined Plaintiff's impairments or a combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. part 404, Subpart P, Appendix 1. Tr. at 35. At step four, the ALJ determined Plaintiff has the residual functional capacity (RFC) to perform sedentary work, as defined in 20 C.F.R.§ 404.1567(a), with the additional limitations of: occasionally climb ramps or stairs, balance stoop, and crouch; no kneeling, crawling, or climbing ladders, ropes, or scaffolds; no operation of leg or foot controls with either lower extremity; no ambulation over uneven terrain; no overhead reaching bilaterally; no forceful gripping or grasping bilaterally; no concentrated exposure to extreme cold or wetness; and, frequent handling and fingering bilaterally. *Id.* At step five, the ALJ concluded that Plaintiff is capable of performing past relevant work as a receptionist. Tr. at 39. Therefore, the ALJ held that Plaintiff was not disabled during the time period from her alleged onset date

through her date last insured. *Id.*

II.

Plaintiff contends that "the Commissioner erred as a matter of law in assessing Cynthia Oemega's credibility and by failing to properly evaluate the medical records of evidence and, thereby, forming an inaccurate hypothetical that did not accurately portray Cynthia Oegema's impairments." Docket # 9 at 6. Upon review of the evidence on record, this Court affirms the ALJ's conclusions.

   **A. Credibility**

Plaintiff claims that the ALJ erred in finding her testimony to be less than credible because there is objective medical evidence on record that supports her allegations of pain and disabling symptoms. Docket # 9 at 10-11. When an ALJ evaluates an individual's complaints of pain and disabling symptoms, the ALJ may consider the credibility of the person. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id.* (citing *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). An ALJ's determination of a Plaintiff's credibility must be supported by substantial evidence. *Id.*; *Winslow*, 566 Fed. App'x at 422. Simply stating that Plaintiff has pain or other symptoms is not sufficient to establish that the individual is disabled. *Walters*, 127 F.3d at 531 (citing 20 C.F.R. § 404.1529(a)). The ALJ must assess an individual's pain by using a two prong test:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the

> alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Id.* (referencing *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994) (quoting *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)); *see also* 20 C.F.R. § 404.1529(a). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531 (citing *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988)). An ALJ can also consider an individual's ability to do household and social activities when assessing the credibility of a person's alleged pain and disabling symptoms. *Id.* at 532.

In determining that Plaintiff's allegations of pain and disabling symptoms were less than credible, the ALJ identified several inconsistencies between Plaintiff's testimony and the evidence provided. In so doing, the ALJ first evaluated and considered Plaintiff's testimony in his decision:

> The claimant alleged that she suffers from feet, shoulders, hands, back and neck problems (Ex. 2E/2). She claimed that she has difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, completing tasks, and using her hands. Additionally, she testified that she could walk one block, sit for 30 minutes, and stand for 15 minutes. Despite these allegations, the claimant stated in her Function Report that she attends to her personal care needs with some alleged difficulty, prepares meals, performs light household chores, washes dishes, does laundry, drives, shops, pays bills, counts change, handles a savings account, uses a checkbook, watches television, reads, completes crossword puzzles, uses a computer, goes out, talks on the phone, and spends time with others (Ex. 5E/2-6).

Tr. at 36. Despite Plaintiff's above-mentioned allegations, the ALJ determined that Plaintiff's

testimony regarding her pain and disabling symptoms was not credible:

> The claimant has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations, which weakens the credibility of her allegations.
>
> The undersigned notes that the claimant was able to sit comfortably through the hearing. She maintained eye contact and responded appropriately. Other that [sic] some crying at the end of the hearing, there were no facial contortions, vocalizations, or any other evidence of pain appreciated during the hearing. The undersigned recognizes observations alone by an Administrative Law Judge at a hearing do not constitute substantial evidence. However, said observations, when combined with other inconsistencies present in the record as to the degree of pain and functional limitation allegedly experienced by the claimant, are worthy of consideration in reaching a credibility determination.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.
>
> Turning to the medical evidence, the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations. The undersigned notes that it is the claimant's responsibility to put forth evidence showing she had an impairment and how severe it is during the period she alleges disability (20 CFR 404.1512(c) and 416.912(c)). The Administrative Law Judge has the authority to make a determination that the claimant's impairments are not incapacitating to the extent alleged. Although the subjective element of incapacity is an important consideration in determining disability, the Administrative Law Judge has discretion to evaluate credibility and to arrive at an independent judgment, in light of medical findings and evidence regarding the true extent of the incapacity alleged by the claimant. The issue of credibility in this case cannot be discussed analytically in absolute terms, but must be measured by degree. The claimant testified, and understandably may honestly believe that her impairments are disabling. However, it is the duty of the undersigned to accurately determine the degree of his impairments based upon the totality of all

of the other evidence of record. The undersigned has evaluated the claimant's subjective complaints and other allegations in accordance with 20 CFR 404.1529 and 416.929; SSR 96-4p; and 96-7p. The claimant's allegations are found to be not fully credible. Additionally, the medical findings do not support the existence of limitations greater than the above listed residual functional capacity.

The claimant suffers from several physical impairments, which limits her to the above-described residual functional capacity. Prior to the alleged onset date, physical therapy notes in 2008 show that the claimant experience[d] 85 to 90% progress, and it was noted that she could do most activities without difficulty (Ex. 23F/2). In November 2009, the claimant underwent a left foot reconstruction (Ex. 2F/7). An x-ray of the right shoulder demonstrated only mild degenerative changes. An MRI of the right shoulder at that time showed mild arthritic change in the acromioclavicular joint and mild thinning of the supraspinatus tendon without tear (Ex. 6F/13-15). In March 2010, the claimant underwent a right arthrosporic acromioplasty and distal calviculectomy after being diagnosed with right shoulder impingement syndrome and acromiovascular degenerative arthritis (Ex. 1F/1). Later that month, the claimant had normal range of motion, and she exhibited no edema or tenderness. Further, she displayed normal reflexes and muscle tone, and her coordination was normal (Ex. 5F/7). In April 2010, it was noted that she was doing very well following surgery. A few months later, she was doing quite well and had returned to work (Ex. 5F/18). An examination performed in September 2010 showed no cyanosis, clubbing, or edema in the extremities. Evaluation of the right leg revealed no Homan's sign. There was no warmth in the lower extremity, and only mild swelling near the right ankle was appreciated. Further, she had full range of motion (Ex. 2F/3-4). One month later, she had full range of motion in the neck, shoulders, and hips without pain. While tenderness was noted in the right third PIP, second and fourth MCP, and third and fifth DIPs, there was no swelling erythema, or warmth except for some swelling in the third PIP. She had full range of motion of the knees and ankles. She was diagnosed with undifferentiated inflammatory arthritis, tendinitis, and low back pain (Ex. 3F/16-17).

After the alleged onset date, in November 2010, the claimant was able to perform a single limb heel rise on the left side and was otherwise neurovascularly intact. While there was some tightness over the lateral gastroc, but it was noted that it was very

inconsequential (Ex. 7F/31). Later that month, the claimant had good range of motion without pain in the neck and shoulders. There was no swelling of any joints, nor was there any erythema or joint warmth. The claimant was able to make a fist to 100% in both hands, and no tender points were noted. It was noted that her tendinitis was improving and that her arthritis had improved (Ex. 3F/12-13). Similar findings were noted in January 2011, though the claimant had two swollen joints and could only make a fist to 50% bilaterally (Ex. 3F/9). A bone density study was completed in April 2011, which was normal (Ex. 4F/1). Later that month, the claimant had normal range of motion throughout without tenderness or edema. Additionally, she displayed normal reflexes and muscle tone, and her coordination was normal. Similar findings were noted one month later (Ex. 5F/70, 80).

In January 2011, the claimant had good range of motion without pain in the neck and shoulders. While two joints were swollen, there was no erythema or warmth. Additionally, she could make a fist to 100% bilaterally (Ex. 17F/31-32). An examination in February 2011 revealed zero swollen joints on a 30 joint count. She had normal range of motion of the neck, shoulders, elbows, wrists, hands, knees, ankles, and feet. Degenerative changes were noted in the right hand, and some mild crepitus was appreciated in both shoulders. However, there was no laxity in the valgus and varus stress tests of the knees. Posterior and anterior drawer tests were negative. McMurray's was also negative (Ex. 8F/0). A review of systems in June 2011 was negative for myalgias (Ex. 5F/90-91). One month later, she had no swelling in any joints, and only minor irritability on rotational motions of the neck. Her physician noted that it was clearly a remission in the inflammatory arthritis (Ex. 8F/5). While a review of systems was positive for back pain in November 2011, it was negative for myalgias. Upon examination, she had normal range of motion without tenderness or edema. Moreover, she displays normal reflexes and muscle tone. Additionally, coordination was normal (Ex. 5F/118). Although it was noted in December 2011 that she was experiencing pain in her shoulder, foot, neck, and back, it was determined that nothing should be done other than continuation of conservative measures (Ex. 6F/3). Later that month, while antalgic, the claimant was ambulatory. She had good overall alignment of the ankle and hindfoot. A neurological examination was normal. An x-ray of the left foot showed a mild hallux valgus interphalangeus. An x-ray of the right foot showed an increased IM angle and a slightly long second metatarsal (Ex. 7F/32).

In January 2012, it was noted that the claimant was doing well. She had no swelling in any joints. She requested a corticosteroid injection in the CMC in her left thumb because her last one gave her five months of relief (Ex. 8F/3). Near that time, an examination showed only mild impingement in the right shoulder. However, she had excellent rotator cuff strength without pain (Ex. 11F/3). Later that month, Babinksi was negative and coordination was intact. Her gait was normal and strength was intact. There was no atrophy or fasciculation seen, and pronator drift was not present. Further range of motion was full and reflexes were intact. Moreover, sensory was intact. An EMG at that time showed evidence of mild to moderate bilateral carpal tunnel syndrome (Ex. 9F/4). Donald Sheill, M.D., conducted a consultative examination later that month. Inspection of the hands revealed no atrophy, swelling, or deformity. Fine and gross dexterity was intact, and sensory was full. Grip strength was lower than expected, but there were signs of lack of full effort. Tinel's was negative bilaterally, and the ulnar nerves were not irritable at the elbows. While the left forefoot was tender, there was no swelling. She had a mild bunion deformity on the right, but her feet otherwise appeared normal. Color, temperature, and moisture were normal, and sensory was intact (Ex. 10F/2).

A few months later, a review of systems was negative for joint pain and muscle pain. It was also negative for numbness, tingling, and weakness. Upon examination, she had normal range of motion and exhibited no edema or tenderness. Additionally, she exhibited normal reflexes and muscle tone, and coordination was normal (Ex. 16F/22). It was noted in April 2012 that the claimant was doing well and had very little discomfort. There were no impingement signs on the right, and she had excellent rotator cuff strength. Mild impingement was noted in the left shoulder, but there was no weakness of the rotator cuff or limited range of motion (Ex. 24F/2). In September 2012, she had normal range of motion and exhibited no edema or tenderness. Additionally, she exhibited normal reflexes and muscle tone, and coordination was normal (Ex. 16F/25). A few months later, a review of systems was negative for joint pain, muscle pain, and weakness. Upon examination, she had normal range of motion. She displayed normal reflexes, exhibited normal muscle tone, and coordination was normal (Ex. 19F/41) . . . .

The credibility of the claimant's allegations is weakened by inconsistencies between her allegations and the medical evidence. Although the inconsistent information provided by the claimant may

>not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable. The claimant does experience some levels of pain and limitations but only to the extent described in the residual functional capacity above.

Tr. at 36-39. The ALJ's assessment of Plaintiff's pain and disabling symptoms is thorough and complete, and there is substantial evidence to support the ALJ's conclusion that Plaintiff's allegations were inconsistent with the medical evidence on record.

Nonetheless, Plaintiff points to several reports that she believes substantiate her testimony regarding her pain and disabling symptoms. However, the medical evidence Plaintiff cites to merely indicates that she had impairments or pain in her shoulders, hands, feet, and back at various times since her alleged onset date. *See* Tr. at 569 (noting Plaintiff had shoulder pain and overhead reaching problems, and that she had shoulder surgery on March 22, 2010); Tr. at 587 (stating Plaintiff had swelling and pain in right hand, and edema, tenderness, and swelling in wrist). This type of medical evidence does not demonstrate or indicate Plaintiff's ability to function given the pain or medical impairments described within the reports. Similarly, it does not touch on the intensity or severity of Plaintiff's pain. To the extent that it does, the ALJ properly accounted for those limitations within his RFC finding. *See* Tr. at 35 (noting, for example, that Plaintiff could not overhead reach bilaterally).

Moreover, the conclusion that Plaintiff's allegations of pain and disabling symptoms were less than credible is supported by the inconsistencies between the evidence on record and Plaintiff's testimony. For example, in her Function Report from January 6, 2012, Plaintiff indicated that she can go grocery and clothes shopping for about an hour, and do simple chores around the house (such as cooking and doing laundry). Tr. at 212, 214. In addition,

Plaintiff's medical reports show that she told her physicians on two separate occasions that she was traveling out of the country and was doing outdoor activities. Tr. at 420, 616. Despite this evidence, Plaintiff testified that she can only sit for a half hour at a time, and that she can only walk one to two blocks (or fifteen minutes). Tr. at 66, 78. Clearly, the medical reports exemplifying Plaintiff's functional abilities, coupled with her function report pertaining to her daily activities, show that Plaintiff's testimony was inconsistent with the evidence on record.

Overall, there is substantial evidence on the record to support the ALJ's determination that Plaintiff's testimony was less than credible. Therefore, this Court defers to the ALJ's credibility determination. *See Jones*, 336 F.3d at 475 (noting when there is sufficient medical evidence to support the ALJ's finding, this Court does not overturn the ALJ's decision, even if evidence supports a different conclusion).

### B. Treating Physician

Plaintiff suggests that the ALJ should have relied on the treating sources' opinions in determining Plaintiff's RFC and credibility. In making this argument, Plaintiff states that the ALJ should have considered and explicitly analyzed various factors under 20 C.F.R. § 404.1527(c) in determining how much weight to afford the opinions of the treating physicians. Docket # 9 at 12-14. Plaintiff has not stated which treating physician she believes the ALJ should have more deeply analyzed in his decision.

An ALJ affords a treating physician's opinion controlling weight when the evidence and findings are consistent with the other substantial evidence on record. 20 C.F.R. § 1527(c)(2). Only when the ALJ does not afford great weight to a treating source's opinion is the ALJ required to apply and conduct an analysis of the factors under (c)(2)(i) and (c)(2)(ii), and

(c)(3) through (c)(6). *Id.* Moreover, an ALJ is not required to rely on medical opinions concluding that a person is, or is not, disabled since that is an issue reserved to the Commissioner. 20 C.F.R. § 1527(d).

Here, the ALJ did not state that he discredited the opinions of Plaintiff's treating physicians, which means that the ALJ *relied* on Plaintiff's treating sources' opinions (indicating he did not have to apply the factors of 1527(c) in his decision). Instead, the only medical opinions that the ALJ afforded little weight to were the opinions of two state agency medical consultants, Dr. Larry Jackson and Dr. Mary Rees. Tr. at 39. A state agency physician is not a treating physician, and is instead a non-examining source under 20 C.F.R. § 1527(e)(2). This means that an ALJ is not bound by a state agency physician's opinion.

Plaintiff repeatedly stated in her brief that the ALJ should have explained why certain medical opinions were not adopted—presumably the opinions of the state agency physicians since they were the only opinions given little weight. Docket # 12-14. However, the ALJ did explain why he did not adopt the opinions of the state agency physicians: "While these opinions are consistent with the finding of not disabled, they did not adequately consider the claimant's subjective allegations." Tr. at 39. Even if the ALJ adopted the opinions of the state agency physicians, it would have actually hurt Plaintiff since they concluded that Plaintiff could perform light work (an RFC higher than sedentary work, which is what the ALJ determined Plaintiff could do). Therefore, based on the ALJ's reasoned decision and upon review of the medical opinions and evidence on record, it is clear that there is substantial evidence to support the ALJ's determination of Plaintiff's credibility and overall RFC.

### C. RFC Determination

Plaintiff claims that since the ALJ improperly disregarded her pain and disabling symptoms, that the RFC finding is inaccurate. Docket # 9 at 11-12. The ALJ's RFC finding indicated that Plaintiff could perform sedentary work. Tr. at 35; *see* 20 C.F.R. § 404.1567(a). Based on this RFC, the ALJ concluded that Plaintiff could perform her past relevant work as a receptionist. Tr. at 39.

Plaintiff spent much of her brief discussing the law regarding treating physician's weight in an RFC determination, which seems to indicate that Plaintiff believes that her RFC "assessment is the duty of her physicians." *Edwards v. Comm'r of Soc. Sec.*, 97 Fed. App'x 567, 569 (6th Cir. 2004). However, an RFC determination is exclusively within the purview of the Commissioner. *Id.* (citing 20 C.F.R. §§ 404.1527(e)(2), 404.1546). The ALJ is not required to base his RFC finding entirely on a physician's opinion because that "would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." *Rudd v. Comm'r of Soc. Sec.*, 531 Fed. App'x 719, 728 (6th Cir. 2013) (quoting SSR-96-5p). Rather, the ALJ may assess both medical and non-medical evidence before making an RFC determination. *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009). Upon review of the medical and non-medical evidence on record, it is clear that there is substantial evidence to support the ALJ's RFC determination limiting Plaintiff to sedentary work.

Nevertheless, Plaintiff contends that the ALJ's RFC finding is improper since it does not take into consideration two factors that the vocational expert said would prevent a

person like Plaintiff from being able to work as a receptionist: elevating her feet throughout the day, and missing two days of work per month. Docket # 9 at 11-12. However, upon review of the evidence, it is clear that there is no medical report that required Plaintiff to miss two days of work per month or elevate her feet throughout the day. While Plaintiff testified at her hearing that she elevates her feet regularly, the ALJ found her testimony less than credible, meaning that he did not have to consider this information in making his RFC determination. *See Powers v. Comm'r of Soc. Sec.*, No. 13-10575, 2014 WL 861541, at *5 (E.D. Mich. March 5, 2014) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("[T]he ALJ is only required to incorporate in his hypotheticals those limitations that he finds credible and supported by the record.")). Thus, there is no evidence on record to refute the ALJ's finding that Plaintiff can perform sedentary work with the limitations outlined above.

   Overall, there is substantial evidence to support the ALJ's determination of Plaintiff's RFC. As such, this Court affirms the decision of the ALJ. *See Jones*, 336 F.3d at 475 (noting that this Court affirms the ALJ's decision when there is sufficient medical evidence to support the ALJ's conclusions).

III.

   Plaintiff's request to remand this case to the Social Security Administration pursuant to Sentence Four or Six of 42 U.S.C. § 405(g) is denied. There is substantial evidence in the record that supports the Commissioner's decision that Plaintiff was not disabled as defined by the Social Security Administration. In addition, Plaintiff has not provided new or previously unavailable evidence to support her claim. *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990) (noting that new evidence is that which did not exist or was unavailable at the time of the

hearing).  In fact, Plaintiff makes no argument that she has new and material evidence for the courts to consider on remand.  Instead, Plaintiff argues that her previously admitted evidence was improperly considered by the ALJ.  Consequently, this Court concludes the Plaintiff has not met her burden to grant a reversal or remand in his case pursuant to Sentence Four or Six of 42 U.S.C. § 405(g).

Accordingly, the decision of the Commissioner is **AFFIRMED** and Plaintiff's request for relief is **DENIED**.


Dated:   8/17/2015                             */s/ R. Allan Edgar*
                                               R. ALLAN EDGAR
                                               UNITED STATES DISTRICT JUDGE